IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHIRLEY A. MURPHY,

    Plaintiff,

vs.                                No. 06cv1161 DJS

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Murphy's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 9]**, filed April 16, 2007, and fully briefed on May 21, 2007. On October 27, 2005, the Commissioner of Social Security issued a final decision denying Murphy's claim for disability insurance benefits and supplemental security income payments. Murphy seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is well taken and will be **GRANTED**.

### I. Factual and Procedural Background

Murphy, now fifty-six years old (D.O.B. January 30, 1951), filed her application for disability insurance benefits and supplemental security income payments on July 16, 2003 (Tr.

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

12), alleging disability since January 1, 2002,[2] due to fibromyalgia, obesity and bipolar disorder. Murphy's insured status for disability insurance benefits expired on **December 31, 2006**. Tr. 25. Thus, Murphy must establish that she was disabled on or before that date. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993). Murphy has a high school education, two years of specialized training as a medical assistant (Tr. 180) and past relevant work experience as an office manager, a fabric cutter, a retail sales clerk, and a home health aide. Tr. 110. On October 27, 2005, the ALJ denied benefits, finding Murphy was not disabled. Tr. 20. Murphy filed a Request for Review of the decision by the Appeals Council. On September 27, 2006, the Appeals Council denied Murphy's request for review of the ALJ's decision. Tr. 5. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Murphy seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record

---

[2] The ALJ noted in his decision that "Murphy ha[d] alleged disability beginning January 1, 2002." Tr. 12. However, the record indicates Murphy filed an "Amendment to Application" on July 16, 2003, amending her Application to reflect she "was unable to work since Jan[uary] 1, 2003." Tr. 106; *see also* Tr. 141 ("It (condition) has been progressively getting worse since January 2003."); Tr. 152, Tr. 155 (participated in hobbies "before January 2003").

or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting her decision, the ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

"'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court "may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zolantski*, 372 F.3d at 1200).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Murphy makes the following arguments: (1) the ALJ erred in finding she was not credible; (2) the ALJ erred when he substituted his own opinion for the medical evidence of record when he failed to find she has nonexertional limitations due to pain and mental illness; and (3) the ALJ erred in his residual functional capacity determination.

**A.  Credibility Determination**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v.*

4

*Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).  However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.  *Id.*  The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility.  *Id.*  "Because '[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court,' [the Court] generally treat[s] credibility determinations made by an ALJ as binding upon review." *Talley v. Sullivan*, 908 F.2d 585,587 (10th Cir. 1990)(quoting *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)).

In his decision, the ALJ found Murphy not entirely credible and linked his finding to substantial evidence.  The ALJ noted, in part:

> 5.  Upon careful consideration of the entire record, I find that Ms. Murphy has a residual functional capacity compatible with the performance of unskilled "light" work.  In making this assessment, I considered all symptoms in accordance with the requirements of 20 CRF §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  I also considered opinion evidence in accordance with the requirements of 20 CFR §§404.1527 and 416.927 and SSRs 96-2p, 96-5p and 96-6p.  The record supports that Ms. Murphy has positive trigger points consistent with a diagnosis of fibromyalgia.  She has apparently carried this diagnosis since 1992.  Ms. Murphy has been followed for a much more recently diagnosed Bi-polar disorder.  She also has an excessive weight to height ratio.  Upon considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms.  However, her statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.  Ms. Murphy has reported being laid off from her last job.  She then successfully attended community college from September 2001 until June 2003.  In April 2003 her grip and muscle strengths were equal and strong in all extremities.  In July 2003 Ms. Murphy was seen for complaints of diffuse pain, which she described as being present for ten years, but worsening in the previous six months. The physical examination was essentially normal but for tenderness over the trapezii, paraspinal musculature, and right epicondyle.  Her joints had full range of motion (Exhibit 1F14). Ms. Murphy has consistently reported body pain and fatigue and she has just as consistently been

>advised to lose weight. She has asserted throughout the adjudicatory period of having a markedly impoverished lifestyle, many days being unable to dress by herself or even lift a glass of water. It is difficult to accept that her physical condition has essentially collapsed since beginning school. Her medical records cite many complaints, but do not objectively portray her as an individual with such profound limitations. It is also noteworthy that in her application for welfare benefits Ms. Murphy has reported that her relocation to the local area was necessitated by person health issues, when in other documents, she is reported to have relocated to help her ill mother.

Tr. 15. It is clear from the ALJ's decision that he discounted the significance of Murphy's subjective complaints of disabling conditions because of a lack of objective corroborative evidence which is appropriate. *See Diaz,* 898 F.2d at 777. Accordingly, the Court will not disturb the ALJ's finding that Murphy was not <u>entirely</u> credible.

## B.  Nonexertional Limitations

An individual is not considered to be disabled under the Social Security Act unless her "physical or mental impairment or impairments are of such severity that [she/he] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B). Therefore, the operative question for disability benefits under the Act is whether Murphy experiences *functional limitations* due to her impairments. *Gardner-Renfro v. Apfel*, No. 00-6077, 2000 WL 1846220 at *3 (10th Cir. Dec. 18, 2000).

Murphy contends the ALJ erred when he failed to make a finding that she has nonexertional limitations due to pain and mental illness. The Court agrees. The medical record supports Murphy's contention that she has nonexertional limitations due to pain which precluded the conclusive application of the Medical Vocational Guidelines. *See e.g.*, Tr. 368 (multiple

tender sites unable to examine); Tr. 403 (hip pain/fibromyalgia); Tr. 405 (painful elbow, knee, hips due to fibromyalgia, prescribed Celexa); Tr. 452 ("She is too painful to have her body touched." and "Vicodin 5/500 for more severe pain"); Tr. 446 (prescribed Neurontin 300 mg three times a day for pain).

The record also indicates Murphy was diagnosed with bipolar disorder (also known as manic-depressive illness).[3]  On April 20, 2005, Jiri Danczik, M.D., completed a Mental Residual Functional Capacity Assessment.  Tr. 397-399.  Dr. Danczik noted Murphy was "Markedly Limited" in the following areas: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) the ability to work in coordination with or proximity to others without being distracted by them; (6) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (7) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Tr. 397-398.  Dr. Danczik included a statement of disability, stating: "Ms. Murphy's ability to work is severely impaired due to her symptoms of Bipolar Disorder.  Her main symptom is memory problems with difficulties to concentrate, anxiety and low energy."  Tr. 399.

---

[3] Bipolar disorder is a disorder in which periods of intense elation and excitation alternate with periods of depression and despair.  http://www.merck.com/mmhe/sec23/ch286/ch286h.html

It is not clear from the record if Dr. Danczik is Murphy's treating psychiatrist. Apparently, Dr. Danczik evaluated Murphy on the following dates: (1) October 26, 2004 (Tr. 502); November 23, 2004 (Tr. 501), and December 21, 2004 (Tr. 500). However, even if Dr. Danczik is a treating psychiatrist, his Mental RFC assessment and his statement of disability do not reveal that Dr. Danczik's opinions are based on "observed signs and symptoms or on psychological tests," either of which qualify as "specific medical findings" to support a psychological opinion. *Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir.2004) (quotation omitted). Nonetheless, his Mental RFC assessment cannot simply be ignored. The ALJ did not indicate in his decision whether he considered Dr. Danczik's Mental RFC assessment or Murphy's GAF scores.

On remand, the ALJ should redetermine Murphy's RFC taking into consideration all of Murphy's nonexertional limitations, i.e., pain and depression. In considering Murphy's allegations of disabling pain due to her fibromyalgia, the ALJ should apply the *Luna* factors. *See Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)(standard for evaluating a nonexertional impairment of pain). If the ALJ chooses to reject Dr. Danczik's opinion, he should apply the analysis set forth in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003)(failure of ALJ to offer an explanation for the weight, if any, he gave to opinion of claimant's treating physician in reaching decision to deny benefits required remand). Finally, the ALJ should consult a vocational expert at step five of the sequential evaluation process.

## C.  Conclusion

It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945

F.2d 1482, 1486 (10th Cir. 1994).  The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's credibility determination.  However, the ALJ's RFC determination and his finding of nondisability are not supported by substantial evidence.  Accordingly, Plaintiff's Motion to Reverse or Remand Administrative Agency Decision is granted.

Nonetheless, the Court expresses no opinion as to the extent of any impairment, or whether Murphy is or is not disabled within the meaning of the Social Security Act.  The Court does not require any result.  This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.

A judgment is accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**